## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIP BRADY and DUNCAN SMITH individually and on behalf of other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> ANKER INNOVATIONS LIMITED; ANKER TECHNOLOGY CORPORATION; POWER MOBILE LIFE, LLC; AND FANTASIA TRADING, LLC D/B/A ANKER DIRECT, <br><br> Defendants. | Civil Action No. _____ <br><br><br> Class Action Complaint |

Plaintiffs Philip Brady, a New York resident ("Mr. Brady"), and Duncan Smith ("Mr. Smith"), a New York resident (collectively "Plaintiffs") on behalf of themselves and other similarly situated individuals, allege the following against defendants Anker Innovations Limited, Anker Technology Corporation, Fantasia Trading, LLC, and Power Mobile Life, LLC (collectively "Anker" or "Defendants"), upon personal knowledge as to themselves and their own acts and upon information and belief -- based upon the investigation made by their attorneys -- as to all other matters, as follows:

## NATURE OF THE CASE

1.      In recent years consumers have become increasingly dependent on portable electronic devices like smart phones, tablets and laptop computers ("PED"). PEDs have made it convenient for consumers to constantly stay in communication with colleagues, friends, and loved ones, and to immediately access information. However, like any electronic device, PEDs require power and their internal batteries must be periodically recharged.

2.      To address the needs of consumers to use PEDs during travel, or when the consumer otherwise lacks access to an electrical outlet, the portable charger industry emerged.  A portable charger, often called a power bank ("Power Bank"), is a small, portable power source consumers can use to recharge their PEDs during travel.  The greater the capacity of the Power Bank, as is expressed in milliampere-hours ("mAh"), the more times the Power Bank can be used to recharge PEDs before the Power Bank must be recharged itself.  Thus, consumers prefer and are willing to pay a premium for Power Banks with higher mAh ratings.

3.      Anker manufactures, markets, and distributes for sale nationwide to consumers a number of Power Banks (the "Products").  It does so by prominently representing the Products' capacities as measured in mAh.  Unfortunately for consumers, testing has shown the Products' actual capacity is substantially lower than what Anker represents.

4.      By deceiving consumers about the Products' capacity as detailed herein, Anker is able to sell more of, and charge more for, the Products than it could if they were labeled accurately.  Further, Anker is incentivized to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

5.      This is a proposed class action brought by Plaintiffs, individually and on behalf of a class of similarly situated individuals, against Anker, seeking redress for the Company's unjust, unfair, and deceptive practices in misrepresenting the capacity of the Products in violation of state law during the applicable statute of limitations period ("Class Period").

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over the parties in this case.  The Plaintiffs live in New York and purchased the Products in New York.  Anker purposefully avails itself of the New York market and distributes the Products to thousands throughout New York.

7.      This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class is comprised of at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  The total claims of individual members of the proposed class (as defined below) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

8.      Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the Products, occurred within this District.

## PARTIES

9.      Plaintiff Philip Brady is an individual consumer who, at all times material hereto, was a citizen and resident of Rye Brook, New York.  In or around 2017, Mr. Brady purchased the Product in New York.  In deciding to purchase the Product, Mr. Brady read and relied on Anker's representations that the Product's capacity is 5200mAh.  Had Mr. Brady known the truth, that the Product's mAh was really less, he would have not purchased it or would not have been willing to pay as much as he paid for the Product.

10.      Mr. Brady frequently uses PEDs during travel and when he otherwise does not have access to an electrical outlet.  Mr. Brady would consider purchasing the Product again if he could trust that Anker's representations about its mAh rating were correct going forward, such as if the Product was redesigned to make Anker's representations about it correct, and if the price

fairly reflected the actual mAh capacity of the battery.  Mr. Brady also has a strong interest in ensuring honesty in the marketplace for Power Banks.

11.    Plaintiff Duncan Smith is an individual consumer who, at all times material hereto, was a citizen and resident of New York, New York.  In or around June 2016, Mr. Smith purchased the Product from Amazon.com.  In deciding to purchase the Product, Mr. Smith read and relied on Anker's representations that the Product's capacity is 20100mAh.  Had Mr. Smith known the truth, that the Product's mAh was really less, he would have not purchased it or would not have been willing to pay as much as he paid for the Product.

12.    Mr. Smith frequently uses PEDs during travel and when he otherwise does not have access to an electrical outlet.  Mr. Smith would consider purchasing the Product again if he could trust that Anker's representations about its mAh rating were correct going forward, such as if the Product was redesigned to make Anker's representations about it correct, and if the price fairly reflected the actual mAh capacity of the battery.  He also has a strong interest in ensuring honesty in the marketplace for Power Banks.

13.    Defendant Fantasia Trading LLC d/b/a AnkerDirect is organized under the laws of the State of Delaware with its principle place of business at 9155 Archibald Avenue, Suite 202, Rancho Cucamonga, California 91730.  Mr. Meng (Steven) Yang is the Chief Executive Officer of Fantasia Trading, LLC.  From at least 2015, until in or around 2017, Fantasia Trading LLC's principal place of business was located in Santa Clara, California.  Fantasia Trading LLC is Anker Innovations Limited's California-based United States wholly owned subsidiary.  At all times during the Class Period, Fantasia Trading LLC's activities were under the control and direction of its parent Anker Innovations Limited.  Throughout the Class Period Fantasia Trading

LLC marketed, imported, distributed, warranted and sold the Products throughout the United States, including New York.

14.     Defendant Power Mobile Life, LLC is organized under the laws of Washington with its principle place of business at 400 108th Avenue NE, Suite 400, Bellevue, Washington 98004.  Mr. Yang is its founder and Chief Executive Officer.  Power Mobile Life, LLC is Anker Innovations Limited's Washington-based United States wholly owned subsidiary.  At all times during the Class Period, Power Mobile Life, LLC's activities were under the control and direction of its parent Anker Innovations Limited.  During the Class Period, Power Mobile Life, LLC marketed, imported, distributed, warranted and sold the Products throughout the United States, including New York.

15.     From 2011 until 2017 Defendant Anker Technology Corporation was a corporation organized under the laws of the State of Delaware with its principal place of business in Santa Clara, California.  Mr. Yang was its founder, President and Chief Executive Officer.  Anker Technology Corporation was Anker Innovations Limited's wholly owned subsidiary.  At all times during the Class Period, Anker Technology Corporation's activities were under the control and direction of its parent Anker Innovations Limited.  During the Class Period Anker Technology Corporation marketed, imported, distributed, warranted and sold the Products throughout the United States, including New York.

16.     Defendant Anker Innovations Limited is organized under the laws of Hong Kong having a principal place of business at Room 1318-19, Hollywood Plaza, 610 Nathan Road, Mongkok, Kowloon, Hong Kong SAR, People's Republic of China.  Mr. Yang is the founder of Anker Innovations Limited and is the company's Director.  Anker Innovations Limited's website shows that it has an office at 400 108th Avenue NE, Suite 400, Bellevue, Washington 98004.

Prior to November 28, 2017, Anker Innovations Limited was named Anker Technology Co., Limited.  Although its name changed on November 28, 2017, its corporate structure and business remained the same.  During the Class Period, Anker Innovations Limited designed and manufactured the Products for export and sale throughout the world, including the United States and New York.  During the Class Period, Anker Innovations Limited sold the Products throughout the United States and New York directly or through its subsidiaries.

17.    Anker Innovations Limited exercised substantial control over its foregoing subsidiaries' functions, employees and decisions-making processes.  Anker Innovations Limited directed, controlled and/or encouraged its subsidiaries to engage in the conduct that is the subject of this Complaint.

18.    The foregoing entities operate not as separate corporate entities but as a single enterprise, thereby making Anker Innovations Limtied liable for the subsidiaries' conduct.  Anker Innovations Limited operates a hierarchical corporate structure wherein it treats its subsidiaries not as separate corporate entities under their own control but as its divisions.

### ANKER DECEPTIVELY MARKETS ITS POWER BANKS.

19.    Millions of Americans depend on PEDs to conduct their daily lives.  PEDs have made it more convenient for consumers to constantly stay in communication with colleagues, friends, and loved ones, and to immediately access information.

20.    To address the needs of consumers to power their PEDs during travel, or when they otherwise lack access to an electrical outlet, an industry for Power Banks has emerged.  The sale of Power Banks now generates more than $15 billion in revenue each year.

21.    The most important factor for consumers in choosing a Power Bank is its capacity, which is measured in milliampere-hours, or "mAh."  The higher the mAh, the greater

the number of times a Power Bank can be used to recharge PEDs before the Power Bank itself must be recharged.  Consumers thus have a strong preference for, and pay more for, Power Banks with a higher mAh.  Accordingly, for most Power Banks, the mAh rating is featured prominently in the product's advertising.

22.     Anker manufactures, markets, and distributes for sale nationwide to consumers a number of Power Banks.  Anker sells the Products directly from its website, through Amazon.com, and through other retailers.  Everywhere the Products are sold, at the point of sale and on the Products' packaging, Anker prominently represents the Products' capacity as measured in mAh.

23.     Unfortunately, testing has shown that Anker has substantially inflated the Products' mAh ratings.  Plaintiffs tested Anker's Power Banks (the same models the Plaintiffs purchased) using a skilled and experienced testing company.  The results are represented in the table below.

| Plaintiff | Capacity Represented (in mAh) | Actual Capacity (in mAh) |
|-----------|-------------------------------|--------------------------|
| Philip Brady | 5200 | 3285 |
| Duncan Smith | 20100 | 12088 |

24.     Upon information and belief, Anker knew, at the time it sold the Products, that the Products' true capacity was substantially less than what Anker had represented.  Anker intentionally misrepresented the Products' capacity to induce the Plaintiffs and other unsuspecting consumers to purchase and pay a premium for the Products.

25.     Anker has profited enormously from its false and misleading representations about the Products.  The purpose of this action is to put an end to Anker's deceptive marketing of the Products and to provide consumers with monetary and injunctive relief.

## CLASS ALLEGATIONS

26.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals within the United States (the "Nationwide Class"), defined as follows:

> All consumers who purchased the Products within the United States. Excluded from the Class is anyone who received a refund, as well as any of Anker's officers, directors, or employees; officers, directors, or employees of any entity in which Anker currently has or has had a controlling interest; and Anker's legal representatives, heirs, successors, and assigns.

27.     Additionally, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs Philip Brady and Duncan Smith (the "New York Plaintiffs") bring this class action on behalf of themselves and all other similarly situated New York Citizens (the "New York Class"), defined as follows:

> All consumers who purchased the Products within New York. Excluded from the New York Class is anyone who received a refund as well as any of Anker's officers, directors, or employees; officers, directors, or employees of any entity in which Anker currently has or has had a controlling interest; and Anker's legal representatives, heirs, successors, and assigns.

28.     Additionally, Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and similarly situated individuals within certain States (the "Multi-State Class"), defined as follows:

> All consumers who purchased the Products in California, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, and Washington.  Excluded from the Multi-State Class are any of Anker's officers, directors, or employees; officers,

directors, or employees of any entity in which Anker currently has or has had a controlling interest; and Anker's legal representatives, heirs, successors, and assigns.

The Nationwide Class, New York Class, and Multi-State Class are referred to collectively as the "Classes."

29.     At this time, Plaintiffs do not know the exact number of members of the Classes but the number is estimated to be in the thousands or more.  The Classes are so numerous that joinder of all members is impracticable.

30.     There are questions of law or fact common to the Classes that predominate over any questions affecting only individual members, including:

(a)     whether Anker misrepresented the Products' mAh ratings;

(b)     whether Anker's conduct was unfair and/or deceptive;

(c)     whether Anker has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Anker to retain the benefits conferred upon it by Plaintiff and the Classes;

(d)     whether Anker's conduct constitutes a breach of express warranty;

(e)     whether Anker violated state consumer protection laws;

(f)     whether Plaintiffs and the Classes have sustained damages and, if so, the proper measure thereof;

(g)     whether Plaintiffs and the Classes are entitled to restitution, and if so, the proper measure thereof; and

(h)     whether Anker should be enjoined from continuing to sell the Products as currently labeled;

31.     Plaintiffs' claims are typical of those of the members of the Classes, because Plaintiffs, like all members of the Classes, purchased, in a typical consumer setting, Anker's Products bearing the claim that its capacity is greater than it really is, and Plaintiffs sustained damages from Anker's wrongful conduct.

32.     Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the Classes.

33.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

34.     No member of the Classes has a substantial interest in individually controlling the prosecution of a separate action.  The damages for each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Anker's conduct.  Thus, it would be virtually impossible for them individually to effectively redress the wrongs done to them.

35.     The prerequisites to maintaining a class action for injunctive or equitable relief are met as Anker has acted or refused to act on grounds generally applicable to the Classes thereby making appropriate final injunctive or equitable relief with respect to the Classes.

36.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Anker.  For example, one court might enjoin Anker from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of members of the Classes who are not parties to such actions.

37.    Anker's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole.  As such, Anker's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I
**(Unfair and Deceptive Acts and Practices in
Violation of the California Consumers Legal Remedies Act,
on Behalf of the Nationwide Class)**

38.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

39.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

40.    The Plaintiffs and the other members of the Nationwide Class  are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

41.    The Plaintiffs, the other members of the Nationwide Class, and Anker have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

42.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Anker in transactions intended to result in, and which did result in, the sale of goods to consumers.

43.    As alleged more fully above, Anker has violated the CLRA by falsely representing to the Plaintiffs and the other members of the Nationwide Class that the Products' capacity is greater than it actually is.

44.    As a result of engaging in such conduct, Anker has violated California Civil Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9).

45.    Pursuant to California Civil Code § 1780(a)(2) and (a)(5), the Plaintiffs seek an order of this Court that includes, but is not limited to, an order requiring Anker to remove and/or refrain from making representations that the Products' capacity is greater than it actually is.

46.    The Plaintiffs and the Nationwide Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

47.    The unfair and deceptive acts and practices of Anker, as described above, present a serious threat to Plaintiffs and the Nationwide Class .

48.    CLRA § 1782 NOTICE.  On August 3, 2018, Mr. Brady sent a CLRA demand letter to Anker via certified mail, return receipt requested, and on November 14, 2018, Mr. Smith sent a CLRA Demand Letter, via certified mail return receipt requested (collectively "Demand Letters").  In the Demand Letters Plaintiffs provided notice of Anker's violation of the CLRA and demanded that within thirty (30) days from that date, Anker correct, repair, replace, or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter also stated that if Anker refused to do so, a complaint seeking damages in accordance with the CLRA would be filed.  Plaintiffs, on behalf of themselves and all other members of the Nationwide Class, seek equitable relief.

49.    If Anker does not fully meet the demand set forth in the Demand Letters, Plaintiffs will amend or seek leave to amend this Complaint in order to seek the following relief under California Civil Code § 1780 for Anker's violations of California Civil Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9):

- actual damages under California Civil Code § 1780(a)(1);

{00297359 }                                        12

- punitive damages under California Civil Code § 1780(a)(4);

- attorneys' fees and costs under California Civil Code § 1780(d); and

- any other relief the Court deems proper under California Civil Code § 1780(a)(5).

## COUNT II
### (Violations of California's False Advertising Law, on Behalf of the Nationwide Class)

50.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

51.     As alleged more fully above, Anker has falsely advertised the Products by falsely claiming that the Products' capacity is greater than it really is.

52.     At all material times, Anker engaged in a scheme of offering the Products for sale to Plaintiffs and the other members of the Nationwide Class by way of distributing within the State of California to the public, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), the Products' packaging and labeling, and other promotional materials and offered for sale the Products on a nationwide basis, including in California.

53.     The misrepresentations and non-disclosures by Anker of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of the False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500, *et seq*.

54.     Said advertisements and inducements were made within and from the State of California and come within the definition of advertising contained in the FAL in that such promotional materials were intended as inducements to purchase the Products and are statements disseminated by Anker to Plaintiffs and the other Nationwide Class members that were intended to reach Plaintiffs and the other Nationwide Class members.  Anker knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

55.    The above acts of Anker did and were likely to deceive reasonable consumers, including Plaintiffs and the other members of the Nationwide Class, by misrepresenting the capacity of the Products, in violation of the "false" and "misleading" prongs of the FAL.

56.    Plaintiffs and the other members of the Nationwide Class  have suffered injury in fact and have lost money or property as a result of Anker's violations of Cal. Bus. & Prof. Code § 17500 *et seq.*

57.    Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiffs and the members of the Nationwide Class seek an order of this Court that includes, but is not limited to, an order requiring Anker to remove and/or refrain from making representations on the Products' packaging and in its advertising that the Products' capacity is greater than it really is.

### COUNT III
**(Violation of California's Unfair Competition Law,
on Behalf of the Nationwide Class)**

58.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

59.    By committing the acts and practices alleged herein, Anker has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

60.    Anker has violated the UCL's proscription against engaging in *unlawful* conduct as a result of:

    (a) its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as
        alleged above; and

(b) its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above

61.     Anker's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

62.     As more fully described above, Anker's false and misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers. Indeed, Plaintiffs and the members of the Nationwide Class were unquestionably deceived regarding the capacity of the Products, as Anker's marketing, advertising, packaging, and labeling of the Products misrepresent and/or omit the true facts concerning the benefits of the Products.  Said acts are fraudulent business practices.

63.     Anker's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

64.     Plaintiffs and the Nationwide Class suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Anker's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

65.     There is no benefit to consumers or competition from the deceptive marketing and labeling of the Products, which Anker misrepresents as having a greater capacity than they actually do.

66.     Plaintiffs and the Nationwide Class had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

67.     The gravity of the consequences of Anker's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the Nationwide Class.

68.     Anker's violations of the UCL continue to this day.

69.     Pursuant to California Business and Professions Code § 17203, Plaintiffs and the Nationwide Class  seek an order of this Court that includes, but is not limited to, an order requiring Anker to:

(a) remove and/or refrain from making representations that the Products' capacity is greater than it really is;

(b) provide restitution to Plaintiffs and the Nationwide Class;

(c) disgorge all revenues obtained as a result of violations of the UCL; and

(d) pay Plaintiffs' and the Nationwide Class' attorneys' fees and costs.

## COUNT IV
### (Violation of New York General Business Law § 349, on Behalf of the New York Class)

70.      Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

71.     Anker engaged in false and misleading marketing concerning the Products.

72.     As fully alleged above, by advertising, marketing, distributing, and/or selling the Products to New York Plaintiffs and other members of the New York Class of consumers, Anker engaged in and continues to engage in deceptive acts and practices.

73.     New York Plaintiffs and the other members of the New York Class seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the New York Class members will be irreparably harmed unless the unlawful actions of Anker are enjoined, in that Anker will continue to falsely and misleadingly advertise the capacity of the Products.  Towards that end, New York Plaintiffs and the New York Class request an order granting them injunctive relief in the form of an order prohibiting Anker from representing that the Products' capacity is greater than it really is.

74.     In this regard, Anker has violated, and continues to violate, New York GBL § 349, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Anker's violation of GBL § 349 as described above, New York Plaintiffs and the other members of the New York Class have suffered damages based on the price premium Anker can and does charge as a result of its misrepresentations and deceptive conduct in an amount to be determined at trial.

75.     Wherefore New York Plaintiffs, on behalf of the New York Class, pray for relief as set forth herein.

## COUNT V
### (Violation of New York General Business Law § 350,
### on Behalf of the New York Class)

76.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

77.     Anker engaged in false advertising concerning the Products and was able to obtain higher purchase prices for the Products based on false advertising.

78.     As fully alleged above, by advertising, marketing, distributing, and/or selling the Products to New York Plaintiffs and other members of the New York Class, Anker engaged in and continues to engage in false advertising.

79.     New York Plaintiffs and the other members of the New York Class seek to enjoin such unlawful false advertising as described above.  Each of the New York Class members will be irreparably harmed unless the unlawful actions of Anker are enjoined, in that Anker will continue to falsely and misleadingly advertise the capacity of the Products.  Towards that end, New York Plaintiffs and the New York Class request an order granting them injunctive relief in the form of an order prohibiting Anker from misrepresenting the Products' capacity.

80.     In this regard, Anker has violated, and continues to violate, GBL § 350, which makes false advertising unlawful.  As a direct and proximate result of Anker's violation of GBL § 350 as described above, New York Plaintiffs and the other members of the New York Class have suffered damages based on the price premium Anker can and does charge as a result of its misrepresentations and deceptive conduct in an amount to be determined at trial.

81.     Wherefore New York Plaintiffs, on behalf of the New York Class, prays for relief as set forth herein.

### COUNT VI
**(Violation of Materially Identical State Consumer Protection Statutes, on Behalf of the Multi-State Class)**

82.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

83.     Anker is engaged in "trade" and "commerce" as it distributes the Products to retail stores for sale to consumers within this and each of the states listed below.

84.     Anker's representation regarding the capacity of the Products were material to a reasonable consumer and likely to affect consumer decisions and conduct.

85.     Anker has used and employed unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

86.     Anker's acts and practices are immoral, unethical, oppressive and unscrupulous.

87.     Anker's conduct is substantially injurious to consumers.  Such conduct has, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for the Products but for Anker's false promotion of the Product's electrical storage capacity.  Consumers have thus overpaid for the Products and such injury is not outweighed by any countervailing benefits to consumers or competition.

88.     No benefit to consumers or competition results from Anker's conduct.  Since reasonable consumers are deceived by Anker's representations of the Products and they were injured as a result, consumers could not have reasonably avoided such injury.

89.     The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Multi-State Class to suffer an ascertainable loss when they paid a premium for the Products.

90.     The practices discussed above all constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least the following state consumer protection statutes:[1]

>   (a) **California Consumer Legal Remedies Act,** Cal. Civ. Code § 1750, *et seq*.,
>
>   (b) **California Unfair Competition Law,** Cal. Bus. & Prof. Code § 17200, *et seq*.;
>
>   (c) **Florida Deceptive and Unfair Trade Practices Act,** Fla. Stat. § 501.201, *et seq.*;
>
>   (d) **Illinois Consumer Fraud and Deceptive Business Practices Act**, 815 Ill. Comp. Stat. § 505/1, *et seq.*;

---

[1] There is no material conflict between these state statutes because these state statutes (1) do not require reliance by unnamed class members; (2) do not require scienter; and (3) allow class actions.

(e) **Massachusetts Regulation of Business Practices for Consumers' Protection Act**, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*;

(f) **Michigan Consumer Protection Act,** Mich. Comp. Laws § 445.901 *et seq.*;

(g) **New Jersey Consumer Fraud Act**, N.J. Stat. Ann. § 56:8-1, *et seq.*;

(h) **New York Deceptive Acts and Practices Act**, N.Y. Gen. Bus. Law § 349, *et seq.*;

(i) **North Carolina Unfair and Deceptive Trade Practices Act,** N.C. Gen. Stat. § 75-1.1(a).

(j) **Ohio's Consumers Sales Practice Act,** Ohio Revised Code § 1345, *et seq.*

(k) **Washington Consumer Protection Act**, Wash. Rev. Code § 19.86.010, *et seq.*;

91.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Multi-State Class to suffer an ascertainable loss when they paid a premium for the Products over comparable products.

92.    Plaintiffs and the Multi-State Class are entitled to recover damages and other appropriate relief, as alleged below.[2]

## COUNT VII
### (Breach of Express Warranty on Behalf of the Classes)

93.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

94.    Anker's representations regarding the Products' capacity constitute affirmations of fact.

---

[2] At this time Plaintiffs only seek equitable relief and attorneys' fees for Anker's alleged CLRA violations.

95.     Anker's representations that the Products' capacity is greater than it really is relates to the goods and became part of the basis of the bargain between Anker and purchasers of the Products.

96.     Plaintiffs and members of the Classes purchased the Products, believing that they conformed to the express warranties.

97.     As set forth in the paragraphs above, Anker's statements concerning the Products are false.

98.     All conditions precedent to Anker's liability under the above-referenced contract have been performed by Plaintiffs and the other members of the Classes.

99.     Anker breached its express warranties about the Products because, as alleged above, the Products' capacity was lower than Anker represented.  Anker therefore breached the applicable state statutes and common law.

100.    As a result of Anker's breaches of express warranty, Plaintiffs and the other members of the Classes were damaged in the amount of the purchase price they paid for the Products, or in the amount they paid based upon the misrepresentations, in amounts to be proven at trial.

101.    On August 3, 2018, within a reasonable time after he knew or should have known of such breach, Mr. Brady, on behalf of himself and the other members of the Classes, placed Anker on notice thereof.

102.    As a proximate result of the breach of warranties by Anker, Plaintiffs and the other members of the Classes did not receive goods as warranted.  Among other things, Plaintiffs and members of the Classes did not receive the benefit of the bargain and have suffered other injuries as detailed above.  Moreover, had Plaintiffs and the members of the Classes known the true facts,

they either would not have purchased the Products, or would not have been willing to pay the price

Anker charged for the Products.

103.    Wherefore Plaintiffs, on behalf of the Classes, pray for relief as set forth herein.

## COUNT VIII
### (Unjust Enrichment on Behalf of
### the Classes)

104.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged

above.

105.    Plaintiffs and the members of the Classes conferred benefits on Anker by

purchasing the Products and paying a greater price for them than they would have if the Anker

had truthfully represented the Products' capacity.

106.    Anker has knowledge of such benefits.

107.    Anker's representations that the capacity of the Products is greater than it actually

is constitutes an affirmation of fact that is part of the basis of the bargain between Anker and

purchasers of the Products.

108.    Anker made the above-referenced representations in order to induce Plaintiffs and

the members of the Classes to purchase, purchase more of, or to pay more for the Products than

they otherwise would have, and Plaintiffs and the members of the Classes relied on the

representations in purchasing the Products.

109.    As a result of Anker's deceptive, fraudulent and misleading labeling, advertising,

and marketing of the Products, Plaintiffs and other members of the Classes were induced to pay

the purchase price and pay more for the Products than they otherwise would have.

110.    Plaintiffs and the members of the Classes were unjustly deprived of payments

because they would not have purchased, or would have purchased less of, or would have paid

less for the Products if true facts had been known.

111.    Anker was enriched at the expense of Plaintiffs and the other members of the Classes, thereby creating a quasi-contractual obligation on Anker to restore those ill-gotten gains to Plaintiffs and the members of the Classes.

112.    Under the circumstances, it would be against equity and good conscience to permit Anker to retain the ill-gotten benefits that it received from Plaintiffs and the other members of the Classes, in light of the fact that the Products purchased by Plaintiffs and the other members of the Classes were not what Anker purported them to be.  Thus, it would be unjust or inequitable for Anker to retain the benefit without restitution to Plaintiffs and the other members of the Classes for the monies paid to Anker for the Products.

113.    As a direct and proximate result of Anker's unjust enrichment, Plaintiffs and the members of the Classes are entitled to restitution or restitutionary disgorgement, in an amount to be proven at trial.

114.    Wherefore Plaintiffs, on behalf of the Classes, pray for relief as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes, respectfully request that the Court enter judgment against Anker as follows:

1.    Certifying this action as a class action, with Classes as defined above;

2.    Requiring that Anker pay for notifying the members of the Classes of the pendency of this suit;

3.    Awarding Plaintiffs and the Classes injunctive relief;

4.    Awarding Plaintiffs and the Classes monetary damages in an amount to be determined at trial, together with prejudgment interest;

5.      Awarding Plaintiffs and the Classes statutory damages in the maximum amount provided by law;

6.      Awarding Plaintiffs and the Classes restitution of Anker's ill-gotten gains;

7.      Awarding Plaintiffs and the other members of the Classes the reasonable costs and expenses of suit, including their attorneys' fees; and

8.      For any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury for all claims so triable.

Dated:      White Plains, New York
            December 6, 2018

By:      _____

D. Greg Blankinship
Todd S. Garber
Jean Sedlak
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
445 Hamilton Ave, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3290
gblankinship@fbfglaw.com
tgarber@fbfglaw.com
jsedlak@fbfglaw.com

*Attorneys for Plaintiff and the Putative Classes*

{00297359 }                    24