USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHILIP BRADY and DUNCAN SMITH
individually and on behalf of other similarly
situated individuals,

                    Plaintiffs,

   -against-

ANKER INNOVATIONS LIMITED; ANKER
TECHNOLOGY CORPORATION; POWER
MOBILE LIFE, LLC; and FANTASIA TRADING,
LLC D/B/A ANKER DIRECT,

                    Defendants.

No. 18-cv-11396 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

      Plaintiffs Philip Brady ("Brady") and Duncan Smith ("Smith") (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this putative class action against Defendants Anker Innovations Limited, Anker Technology Corporation, Power Mobile Life, LLC, and Fantasia Trading, LLC, d/b/a Anker Direct ("Fantasia") (collectively, "Defendants"). (First Amend. Compl. ("FAC"), ECF No. 20.) Plaintiffs assert claims under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ Code §§ 1750-85, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code §§ 17200-17210, New York's General Business Law ("GBL") §§ 349-350, and several other materially identical state consumer protection statutes. (*Id.*) Plaintiffs also bring claims for beach of express warranty and unjust enrichment. (*Id.*)

      Presently before this Court is Defendants' motion to dismiss the FAC for lack of personal jurisdiction and for failure to state a claim. (ECF No. 26.) For the following reasons, Defendants motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the FAC and deemed true for purposes of the motion.

### A.  The Emergence of Power Banks and Their Uses

In recent years, consumers have become increasingly dependent on portable electronic devices ("PEDs"), such as phones, tablets, and laptop computers.  (FAC ¶¶ 1, 24.)  Like any other electronic devices, PEDs require power and periodic recharging.  (*Id.* ¶ 1.)  Thus, the portable charger industry emerged.  (*Id.* ¶¶ 2, 25.)

A portable charger, often called a power bank ("Power Bank"), is a small, portable power source that consumers can use to recharge PEDs.  (*Id.* ¶¶ 2, 26.)  In general, the greater the capacity of a Power Bank, which is expressed in milliampere-hours ("mAh"), the more times the Power Bank can be used to recharge PEDs before the Power Bank itself must be recharged.  (*Id.* ¶¶ 2, 26.)  For this reason, consumers purportedly have a strong preference, and are willing to pay a premium for, Power Banks with higher mAh ratings.  (*Id.* ¶¶ 2, 26.)  Because of this preference, most companies prominently feature the mAh rating of Power Banks in the products' advertising. (*Id.* ¶ 26.)  It is Defendants' representations about the mAh rating of their Power Banks that is at the heart of this lawsuit.  (*Id.* ¶¶ 3-5.)

### B.  Defendants Alleged Misrepresentations

Defendants manufacture, market, and distribute Power Banks.  (*Id.* ¶ 27.) Their Power Banks are sold directly from Defendants' website, from Amazon.com, and from other retailers. (*Id.*)  At both the point of sale and on their Power Banks' packaging, Defendants prominently represent their Power Banks' power capacity as measured in mAh.  (*Id.*)

Plaintiffs frequently use PEDs during travel and when they do not have access to an electrical outlet.  (*Id.* ¶¶ 10, 12.)  Therefore, Plaintiffs each purchased a Power Bank on Amazon.com from Defendants.  (*Id.* ¶¶ 9, 11, 28.)  Specifically, on February 25, 2017, Brady

purchased an A1211 Astro E1 model Power Bank, which had an expressly advertised "5200 mAh" capacity, and, on June 6, 2016, Smith purchased an A1371 Powercore + model Power Bank, which had an expressly advertised "20100 mAh." (*Id.* ¶ 28.) Plaintiffs believed that the Power Banks they purchased could deliver a charge to their PEDs that was reflective of the advertised capacity. (*Id.* ¶ 29.)

Despite their expectations, however, Plaintiffs came to realize that the Power Banks they had purchased were incapable of delivering the capacity that had been represented to them. (*Id.*) As such, with the aid of a skilled and experienced testing company, Plaintiffs' tested the Power Banks. (*Id.* ¶ 30.) That testing revealed that Defendants had substantially inflated their Power Banks' mAh ratings. (*Id.*) For example, testing showed that Brady's Power Bank, which had been advertised as having a "5200 mAh" capacity, had an "Actual Capacity" of 3285 mAh. (*Id.*) Similarly, testing revealed that Smith's Power Bank, which had been advertised as having "20100 mAh," had an "Actual Capacity" of 12088 mAh. (*Id.*)

Plaintiffs contend that Defendants knew the Power Banks' true capacity was substantially lower than advertised. (*Id.* ¶ 31.) Nevertheless, according to Plaintiffs, Defendants misrepresented the true capacity to get customers to pay a premium. (*Id.*) Through these false and misleading misrepresentations, Defendants have profited enormously. (*Id.* ¶ 32.) Even so, Defendants' conduct notwithstanding, Plaintiffs would consider purchasing Defendants' Products again if they could trust that the representations about the mAh rating were correct going forward, which could include redesigning their Power Banks or changing prices to reflect the actual mAh capacity of the battery. (*Id.* ¶¶ 10, 12.)

# LEGAL STANDARDS

## I.    Rule 12(b)(2)

A court must dismiss an action against any defendant over whom it lacks personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant.  *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 399 F. Supp. 2d 325, 330 (S.D.N.Y. 2005).  "Where, as here, a court relies on pleadings and affidavits, rather than a full-blown evidentiary hearing, the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant."  *Id.* (quoting *Distefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).  In ruling on a 12(b)(2) motion, a court may consider materials outside the pleadings, including affidavits and other written materials.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997).  The court assumes the verity of the allegations "to the extent they are uncontroverted by the defendant's affidavits."  *MacDermid, Inc.*, 702 F.3d at 727 (internal quotations omitted).  Nonetheless, all factual doubts and disputes are resolved in the plaintiff's favor.  *See A.I. Trad Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

## II.    Rule 12(b)(6)

Under Rule 12(b)(6), courts must assess whether a complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  A court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the facts pleaded allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

### I.  Motion to Dismiss for Lack of Personal Jurisdiction

Defendants have moved to dismiss the FAC on the basis that the Court lacks personal jurisdiction as to each of the Defendants. (Defs. Mem. of Law in Support of Mot. to Dismiss ("Defs. Mot."), ECF No. 27, at 5-12.) In opposing Defendants' motion, Plaintiffs have informed the Court that they do not oppose dismissal of Defendants Anker Innovations Limited, Anker Technology Corporation, and Power Mobile Life, LLC, for want of personal jurisdiction. (Pls. Mem. of Law in Opp. to Defs. Mot. to Dismiss ("Pls. Opp."), ECF No. 29, at 2.) Accordingly, the Court GRANTS this portion of Defendants' motion, thereby dismissing Anker Innovations Limited, Anker Technology Corporation, and Power Mobile Life, LLC, from the case, without prejudice. *See Smith v. United States*, 554 F. App'x 30, 32 n.2 (2d Cir. 2013) ("[A] dismissal for want of personal jurisdiction is without prejudice." (citing *Elfenbein v. Gulf & Western Indus., Inc.*, 590 F.2d 445, 449 (2d Cir. 1978)). The below analysis is thus only applicable to Fantasia, the only remaining defendant.

### A.  Relevant Facts Regarding Fantasia

Fantasia, doing business as AnkerDirect, is a subsidiary of Anker Innovations and is organized under the laws of the state of Delaware. (FAC ¶ 13; Decl. of Romeo Luo in Support of Defs. Mot. to Dismiss ("Luo Decl."), ECF No. 28, at ¶¶ 29-30.) Its principal place of business is in the state of California. (FAC ¶ 13; Luo Decl. ¶ 29.) Fantasia does not have any property, offices, or employees in New York, and it does not manufacture or store any goods in New York.

(Luo Decl. ¶¶ 31-33.) During the purported class period, Fantasia marketed, imported, distributed, warranted, and sold Defendants' Power Banks throughout the United States. (FAC ¶ 13.) And, at all relevant times, Fantasia was the account holder for the AnkerDirect Amazon storefront on Amazon.com. (Luo Decl. ¶ 34.)

AnkerDirect is listed as the "sole authorized seller of authentic Anker products (other than Amazon) on the Amazon platform." (FAC ¶ 14.) To this end, Fantasia, doing business as AnkerDirect, functions as the Anker distributor in the United States. (*Id.* ¶ 15.) It ships its products in bulk to Amazon's warehouses in Washington state, in anticipation of consumer purchases on Amazon.com. (Luo Decl. ¶ 34, 37.) Amazon then organizes the products into product listings in a multitude of categories. (*Id.* ¶ 34.) Once the product is sold, Amazon ships it to the customer. (*Id.*) Orders made on Amazon.com are fulfilled almost exclusively by Amazon, except under exceptional circumstances. (*Id.* ¶ 36.) When a customer completes a purchase from the Amazon storefront, they receive an email from AnkerDirect to "[c]heck[] in about" the order. (FAC ¶ 16.)

Orders of products listed on the AnkerDirect Amazon storefront account for approximately 85% of Fantasia's sales. (Luo Decl. ¶ 35.) But Fantasia also owns and operates a website located at "www.anker.com" (the "Anker Website"), which is hosted by Amazon Web Services. (*Id.* ¶ 38.) It fulfills orders completed on the Anker Website by shipping products from Fantasia's warehouse in California. (*Id.* ¶ 39.) Overall, approximately 10% of Fantasia's total, worldwide sales are to New York residents. (*Id.* ¶ 40.)

### B. Personal Jurisdiction Analysis

When determining personal jurisdiction over a foreign defendant, courts will follow a two-step inquiry. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). First, courts assess "whether the defendant is subject to jurisdiction under the law of the forum state—here, New York." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221,

224 (2d Cir. 2014).  Second, courts "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution."  *Id.*

### 1. *New York's Long-Arm Statute Analysis*

Contending that "Plaintiffs' allegations of personal jurisdiction are so deficient that they do not even satisfy due process," Defendants do not address whether New York's long-arm statute, N.Y. C.P.L.R. § 302, confers jurisdiction over Fantasia based on the sale of goods through both its AnkerDirect Amazon storefront and the Anker Website.  (Defs. Mot. 6.)  The issue warrants discussion.

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  This is a "single act statute," *i.e.* "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)).  "Purposeful activities are those with which a defendant, through violational acts, avails itself of the privileges of conducting activities within the forum State."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007)).

As to the first requirement, courts analyzing internet activity as a basis for jurisdiction will typically look at "the nature and quality of commercial activity that an entity conducts over the

Internet." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1999)). This involves the use of a "sliding scale" test based on the level of a website's interactivity. *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458 (JS)(ETB), 2012 WL 2001443 at *3 (E.D.N.Y. June 4, 2012).[1] Under this test, where a "website is interactive and allows a buyer . . . to submit an order online, courts typically find that the website operator is 'transacting business'" in the forum state and is thus subject to jurisdiction. *Id.* (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000)).

Of course, sellers, such as Fantasia, may not always directly control the website that collects online orders. This, however, does not necessarily defeat jurisdiction. *Id.* at *3-4; *Mopnado*, 2016 WL 368166 at *7. Indeed, courts within this circuit have concluded that "[r]egularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though [d]efendants do not control

---

[1]     Defendants concede, as they must, that the *EnviroCare* court "found jurisdiction over a defendant who posted an item for sale on Amazon and shipped it to Amazon's fulfillment office, which subsequently shipped it to a New York consumer." (Defs. Reply in in Support of Mot. to Dismiss ("Defs. Reply"), ECF No. 23, at 3 (citing *EnviroCare*, 2012 WL 2001443 at *3-4).) Defendants, however, argue that the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014) essentially guts *EnviroCare* and other similar cases that pre-dated it. (*Id.*) In support, Defendants point to *Lopez v. Shopify, Inc.*, where the court queried, in a footnote, whether "pre-2014 internet jurisdiction cases fully survive[d]" *Walden*. *See* No. 16 Civ. 9761 (VEC) (AJP), 2017 WL 2229868, at *8 n.9 (S.D.N.Y. May 23, 2017), *adopted by*, 2018 WL 481891 (S.D.N.Y. Jan. 17, 2018). The Court disagrees. As an initial matter, *Walden*, which dealt with an inapposite set of facts, expressly left open the question about "how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." 571 U.S. at 290 n.9. Moreover, Defendants cite to no circuit court authority that questions the validity of cases like *EnviroCare*, and they seemingly ignore the numerous courts within this and other circuits have continued to find that sales of goods through third-party vendors does not defeat personal jurisdiction. *See, e.g.*, *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404 (S.D.N.Y. 2017) ("This regular offering and sale of textbooks to New York through online marketplaces puts iBestBargains in the first category, even if they 'do not control [their online storefronts] or [their] interactivity to the same extent that they control' their own website."); *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016); *see also Telebrands Corp. v. Mopnado*, No. 2:14-07969 (JLL) (JAD), 2016 WL 368166, at *7 (D.N.J. Jan. 12, 2016) ("Defendant has intentionally created a business model whereby it now sells the allegedly infringing Mopnado product exclusively through its storefront on Amazon.com, thereby taking advantage of Amazon's national presence, and has sold at least 626 units of that product to New Jersey residents pursuant to that arrangement. The Court finds that, through those sales, Defendant has purposefully availed itself of the privilege of doing business in New Jersey.").

their Amazon.com 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Lifeguard Licensing Corp.*, 2016 WL 3748480 at *3. The primary consideration is whether the vendor "use[s] [the storefront] 'as a means for establishing regular business with a remote forum.'" *Id.* (quoting *EnviroCare*, 2012 WL 2001443 at *3).

Here, the Court concludes that Plaintiffs have established that Fantasia transacted business in New York. Fantasia was the account holder for the AnkerDirect storefront on the Amazon platform (Luo Decl. ¶ 34), and it represented itself as the "sole authorized seller of authentic Anker products" on that website. (FAC ¶ 14.) As was the case in *EnviroCare*, even if it did not "personally manage the website[] through which [it] sold [its] products," Fantasia used these websites to expand its nationwide reach. *EnviroCare*, 2012 WL 2001443 at *4 (citing *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006)). And in doing so, those "internet-based activities established regular business with foreign jurisdictions, including New York." *Id.* In any event, Fantasia *also* owns and operates a website to sell Anker products. (Luo Decl. ¶ 38; *see also* Decl. of D. Greg Blankenship ("Blankenship Decl."), ECF No. 30, Ex. B.) Fantasia's direct operation of this website to fulfill sales provides an alternate basis to conclude that the company has transacted business in New York. *See Lifeguard Licensing*, 2016 WL 3748480 at *3. Finally, it does not matter that Fantasia's sales to New York only account for 10% of its total, worldwide sales because, as previously explained, a single act is sufficient to support jurisdiction under N.Y. C.P.L.R. § 302(a). *See Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, No. 15-CV-06478 (ALC), 2016 WL 7451306, at *3 (S.D.N.Y. Dec. 27, 2016).

As to the second requirement, the Court has no trouble determining that Plaintiff's claims arise from its business activity in New York. The crux of Plaintiffs' allegations is that Defendants, including Fantasia, deceived consumers about the power capabilities of its products, which were

advertised on and sold through the above referenced internet sources that ultimately reached New York state.

Therefore, given the above, the Court concludes that Plaintiffs have established that personal jurisdiction is consistent with New York's long-arm statute. The Court now turns to whether personal jurisdiction is consistent with the Due Process Clauss.

### 2. *Constitutional Analysis*[2]

As it pertains to personal jurisdiction under the Due Process Clause, courts may exercise personal jurisdiction over an out-of-state defendant if (1) the defendant has certain minimum contacts with the forum state, and (2) the maintenance of the lawsuit does not "offend traditional notions of fair play and substantial justice." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945)).

### i. *Minimal Contacts*

The Supreme Court has recognized two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779-80 (2017). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. On the other hand, specific jurisdiction "depends on an 'affiliation between the

---

[2]       Although Defendants contend that New York's "long arm statute is more restrictive than due process" (Def Mot. 6), at least one court in this circuit has concluded that "the constitutional requirements of personal jurisdiction are satisfied because application of [N.Y. C.P.L.R.] § 302(a) meets due process requirements." *Grand v. Schwarz*, No. 15-CV-8779 (KMW), 2016 WL 2733133, at *4 (S.D.N.Y. May 10, 2016) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006)). The Court, however, engages in a due process analysis out of an abundance of caution.

forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the States' regulation." *Id.* (alterations omitted). Specific jurisdiction may be exercised when the defendant maintains sufficient contacts with the forum state and the cause of action arises out of those contacts. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9 (1984). As Defendants raised each type of jurisdiction in their moving papers, the Court addresses both below.

### a. General Jurisdiction

Except in exceptional circumstances,[3] courts will not exercise general jurisdiction over a company unless it is "essentially at home" in the forum state. *See Brown v. Lockheed*, 814 F.3d 619, 626-27 (2d Cir. 2016). As Defendants note, and Plaintiffs do not contest, Fantasia is neither incorporated in New York nor is its principal place of business in the state. (Defs. Mot. 7 (citing Luo Decl. ¶¶ 31-33).) Therefore, the Court easily concludes that it lacks general jurisdiction.

### b. Specific Jurisdiction

The inquiry of whether court may "assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283-84 (internal quotations omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). To this end, courts must assess whether a defendant's "suit-related conduct . . . create[s] a substantial connection with the forum State." *Id.* at 284; *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (same). When ascertaining if a defendant's suit-related conduct creates a substantial connection, courts should address the following

---

[3] In its opinion in *Daimler AG v. Bauman*, the Supreme Court noted, in dicta, that it had not "foreclose[d] the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such nature as to render the corporation at home in that State." 571 U.S. 117, 139 (2014). Fantasia's activities in New York plainly do not approach this level.

considerations: (1) whether the relationship with the forum state "arise[s] out of contacts that 'the defendant [itself]' creates with the forum State," as opposed to "contacts between the plaintiff (or third parties)"; and (2) what are the "defendant's contacts with the forum State itself," as opposed to the "defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284-85 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Helicopteros*, 466 U.S. at 417; *Int'l Shoe*, 326 U.S. at 319; *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

Here, Plaintiffs have established the requisite minimal contact with New York. *First*, Fantasia's suit-related connection to New York is ultimately a product of its own conduct, *i.e.*, using the Internet to advertise, market, and sell its products to a broad set of customers, including those in New York. *Second*, Fantasia's contacts with New York—again, the advertisement and sale of products via its Amazon storefront and the Anker Website—evinces its "purposeful availment" to the privilege of doing business in the state. Indeed, Fantasia cannot credibly contend it could not "reasonably anticipate being haled into court" in New York based on the alleged conduct in the FAC. *See Burger King*, 471 U.S. at 474-75.[4]

### ii. *Reasonableness*

"While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts . . . , it may be defeated where the defendant presents a compelling

---

[4] The Supreme Court's opinion in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) does not compel a different result. *Nicastro* merely stands for the unremarkable proposition that mere intent to serve the U.S. market does not mean a defendant purposefully availed itself to any specific state's forum. *See id.* at 889 (Breyer, J. concurring). Here, in placing goods for sale on both its Amazon storefront and its own website, had availed itself to promoting, advertising, and selling its product through use of the nationwide reach of these websites and it contemplated sales in New York. *See Cummunico Ltd. v. DecisionWise, Inc.*, No, 3:14-CV-1887 (RNC), 2018 WL 1525711, at *5-6 (D. Conn. Mar. 28, 2018) ("Under pre-*Nicastro* precedent in this Circuit, exercising personal jurisdiction over DecisionWise is proper if its relationship with Amazon and Barnes & Noble shows an 'attempt to serve' the Connecticut market. Relying on these precedents even after *Nicastro*, courts have found that although the sale of a defendant's product by a third-party distributor is alone insufficient to establish personal jurisdiction, it can be established when a defendant has advertised its product over the internet, a third-party distributor has sold the product in the forum state, and an agreement between the defendant and the distributor contemplated sales in the forum state.").

case that the presence of some other considerations would render jurisdiction unreasonable."

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Burger King*, 471 U.S. at 477)). Such considerations include the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987)).

Applying these factors to this case, exercise of jurisdiction is entirely reasonable. Regarding the first factor, although there understandably will be some burden on Fantasia—who operates from California—to litigate this case in New York, Fantasia's contention of a "severe burden" is nothing more than a "generalized complaint[] of inconvenience arising from having to defend [itself] from suit." *Chloé*, 616 F.3d at 173. In any event, "'the conveniences of modern communication and transportation ease' any burden the defense of this case in New York" might impose on Fantasia. *Licci*, 732 F.3d at 174 (quoting *Robertson-Ceco Corp.*, 84 F.3d at 574). This factor does not help Defendants. The second factor favors Plaintiffs because New York has a "manifest interest in providing effective means of redress for its residents," such as Plaintiffs. *Chloé*, 616 F.3d at 173 (quoting *Burger King*, 471 U.S. at 483). The third factor also necessarily favors Plaintiffs, since they are both New York citizens, they chose a New York forum, and have even brought some New York-related claims. *See id.*

As to the fourth factor, courts will generally consider where witnesses and evidence are likely to be located. *See Robertson-Ceco Corp.*, 84 F.3d at 574 (citations omitted). Although no party has addressed this issue, the potential witnesses and evidence are likely located in both New York and California, amongst other places. Thus, this factor is neutral. *See, e.g., Bradley v. Staubach*, No. 03 Civ. 4160(SAS), 2004 WL 830066, at *6 (S.D.N.Y. Apr. 13, 2004) ("The

potential witnesses are located in New York, Texas, and Canada. Moreover, documentary evidence is likely located in both New York and Texas.  As such, this factor is neutral.").  *Finally*, neither Fantasia nor Plaintiffs have "suggested, let alone shown, any substantive social policies that would be furthered by permitting this case to be heard in" in either New York or another forum.  *See Robertson-Ceco Corp.*, 84 F.3d at 575.  The fifth factor accordingly is neutral.

In sum, the Court concludes that exercising personal jurisdiction over Plaintiffs would not "offend traditional notions of fair play and substantial justice."  *See Goodyear*, 564 U.S. at 923.  As jurisdiction comports with both New York's long-arm statute and the Due Process Clause, the Court holds that it has personal jurisdiction over Fantasia, and it DENIES Fantasia's motion to dismiss the FAC for want of personal jurisdiction.

## II.  Motion to Dismiss Statutory Fraud Claims

### A.  California's CLRA, FAL, and UCL Claims

Plaintiffs state three causes of action premised on California's CLRA,[5] FAL,[6] and UCL,[7] respectively.  Common amongst all three statutes is the requirement that pleadings comport with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Great Pac. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (explaining that claims under

---

[5]    The CLRA prohibits, *inter alia*, "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result . . . in the sale . . . of goods . . . to any consumer." Cal. Civ. Code § 1770(a).

[6]    The FAL makes it unlawful to disseminate, with the "intent directly or indirectly" induce "the public to enter into any obligation" related to the disposal property or services, "any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal Bus. & Prof. Code § 17500.  To state a claim under the FAL, plaintiff must allege that "members of the public are likely to be deceived."  *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009) (quoting *Kasky v. Nike, Inc.*, 45 P.3 243, 250 (Cal. 2002)).

[7]    The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

FAL are subject to Rule 9(b)); *see also Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 682 (S.D.N.Y. 2017) ("The plaintiffs allege that the defendants violated California's [UCL], Cal. Bus. & Prof. Code § 17200, *et seq.*, California's [FAL], Cal. Bus. & Prof. Code § 17500, *et seq.*, and California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* To the extent these consumer protection claims are premised on allegations of fraudulent conduct, they must be pleaded with particularity under Rule 9(b).").

While federal pleading rules typically require a "short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims are subject to the heightened pleading requirement of Rule 9(b). To satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[8] *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

Here, Plaintiffs have satisfied the first, third, and fourth requirements under Rule 9(b). *First*, Plaintiffs have sufficiently set forth the exact statements they allege were fraudulent/deceptive, *i.e.*, that the Power Banks purchased by Plaintiffs represented that they had capacities of "5200 mAh" and "20100 mAh," respectively. (FAC ¶ 28.) *Second*, Plaintiffs have sufficiently pled where and when the statements were made. Specifically, Plaintiffs allege that the purported misrepresentations were made "[e]verywhere the Products are sold, at the point of sale

---

[8]     Although, in light of the below analysis, the Court does not reach whether Plaintiffs' have alleged a sufficient connection with California to support their CLRA, UCL, and FAL claims, the Court briefly addresses Defendants' contention that Rule 9(b) applies to Plaintiffs' "allegations of a nexus with California." (Def. Reply 6.) Simply put, Defendants' position is wholly devoid of any support in case law. For example, cases such as *Ehret v. Uber Techs.*, 68 F. Supp. 3d 1121, 1129 (N.D. Cal. 2014), and *Warner v. Tinder, Inc.*, 105 F. Supp. 3d 1083, 1095-96 (C.D. Cal. 2015) undertake the analysis under Rule 12(b)(6), and generally separate that analysis from the Rule 9(b) analysis (to the extent the court engages in one). Moreover, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003), upon which Defendants primarily rely, merely stands for the unremarkable proposition that a claim of fraud—even if pled as a "unified course of fraudulent conduct"—must still comport with Rule 9(b)'s pleading requirements. *Id.* at 1103-04. It says nothing about whether extraterritorial application of the CLRA, UCL, and FAL must satisfy Rule 9(b). The Court thus reiterates that such allegations are only subject to Rule 8(a)'s pleading requirement. To the extent Defendants intend to challenge the extraterritorial application of CLRA, FAL, and UCL, the Court will evaluate whether Plaintiffs adduce sufficient facts to state a plausible claim of relief. *See, e.g.*, *Ehret*, 68 F. Supp. 3d at 1132.

and on the Products' packaging," and that those representations were "expressly advertised" on June 6, 2016 and February 25, 2017. (*Id.* ¶¶ 27-28.) *Finally*, Plaintiffs have explained why the statements made were allegedly fraudulent by (1) providing a table comparing the Power Banks' "Capacity Represented" and their "Actual Capacity," and (2) maintaining that they would not have purchased the product or have been willing to pay as much as they paid had they been aware "that the Product's mAh was really less" than represented.[9] (*Id.* ¶¶ 9, 11, 30.)

The deficiency of Plaintiffs' CLRA, FAL, and UCL claims under Rule 9(b), as currently pleaded, pertains to the FAC's failure to identify the speaker. The FAC refers to "Anker" when describing the alleged misrepresentations. (*See, e.g.*, *id.* ¶¶ 3-4, 27-29, 31-32.) "Anker," as defined by the FAC, is a collection of Defendants Anker Innovations Limited, Anker Technology Corporation, Power Mobile Life, LLC, and Fantasia. (*Id.* at 1.) Plaintiffs maintain that they are not engaging in "group pleading because Fantasia will be the only defendant remaining in the litigation." (Pls. Opp. 16.) Plaintiffs further aver that "it was Fantasia that was the U.S. entity responsible for marketing and selling Power Banks" and that "Fantasia is the entity that sells Anker products on Amazon."[10] (*Id.* at 14 (citing FAC ¶¶ 13-14.) True as this may be, as *currently*

---

[9] Defendants contend that Plaintiffs have "tacitly conceded that the allegedly false representations are actually accurate." (Defs. Reply 7.) In so arguing, Defendants point to Plaintiffs' contention in their opposing papers that Defendants had admitted that the labels on the Power Banks were based on total capacity rather than on the capacity the Power Banks can deliver. (*Id.* (quoting Pls. Opp. 4.) Consideration of this argument is improper. Plaintiffs and Defendants are relying on a letter (Blankenship Decl. Ex. A) that is plainly outside of four corners of the pleadings and not within the "narrow universe of materials" that may be considered by the Court on a motion to dismiss. *See Brass v. Am. Film Techs., Inc.* 987 F.2d 142, 150 (2d Cir. 1993). In any event, whether a statement is deceptive or misleading is a question of fact that is improper for the Court to resolve on a motion to dismiss. *See Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) ("Whether the labels would mislead a reasonable consumer is a question of fact for the jury.").

[10] Plaintiffs also suggest that the Court also consider the facts raised in the Luo Declaration for purposes of resolving Defendants' 12(b)(6) motion to dismiss. (Pl. Opp. 15, 17.) The Court, however, cannot "consider factual averments contained in affidavits on a Rule 12(b)(6) motion." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). Therefore, although consideration of the Luo Declaration was proper in resolving Defendants' 12(b)(2) motion, the Court will not consider the Luo Declaration in determining whether Plaintiffs have sufficiently pleaded their claims.

*pleaded*, Plaintiffs' allegations could seemingly be attributed to the other, now dismissed Defendants.  For example, the Amazon storefront was operated by AnkerDirect, *i.e.*, Fantasia, the FAC makes clear that Fantasia's "activities were under the control and direction of its parent [Defendant] Anker Innovations Limited."  (FAC ⁋ 13.)  Plaintiffs may very well be able to cure this defect, but the Court cannot, at this time, conclude from the face of the FAC that, just because Plaintiffs have withdrawn their claims as to the other Defendants, it is definitively Fantasia that has engaged in the alleged misrepresentations.  Therefore, Plaintiffs' CLRA, FAL, and UCL claims are DISMISSED without prejudice.  Plaintiffs are granted leave to replead.

### B. New York GBL §§ 349-350 Claims

Although Defendants ask this court to dismiss the FAC with prejudice, they have not challenged—either in their opening papers or on reply—whether Plaintiffs have adequately pled their New York GBL claims.  Defendants have failed to do so even though Plaintiffs explicitly raised the issue in opposing the motion to dismiss.  (*See* Pl. Opp. 21.)  The only basis that this Court can discern from Defendants' moving papers is that they are moving to dismiss Plaintiffs' GBL allegations on the same grounds as Plaintiffs' CLRA, FAL, and UCL claims, *i.e.*, failure to comport with Rule 9(b).  However, claims under GBL Sections 349 and 350 "are not subject to the heightened pleading requirements of Rule 9(b)."  *Braynina v. TJX Cos., Inc.*, No. 15 Civ. 5897 (KPF), 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016).  Therefore, to the extent Defendants actually moved to dismiss Plaintiffs' GBL claims under Rule 9(b), that motion is DENIED.

### III. Motion to Dismiss State Common Law Claims

### A. Choice of Law

As it relates to Plaintiffs' breach of express warranty and unjust enrichment claims, the Court must resolve which state's law to use in its analysis and will look to the choice of law rules of the forum state, *i.e.* New York, to make that determination.  *See Curley v. AMR Corp.*, 153 F.3d

5, 12 (2d Cir. 1998) (citing *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996)). In New York, "the first question to resolve is whether there is an actual conflict of laws." *Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 218 (S.D.N.Y. 2017) (citation omitted). If no actual conflict exists, a choice of law analysis is not necessary. *Id.*

Here, Defendants only briefed their motion to dismiss Plaintiffs' breach of warranty and unjust enrichment claims by reference to cases applying New York law. (Defs. Mot. 20-22.) Plaintiffs, for their part, acknowledge that California law could potentially apply to its breach of warranty claim, but they otherwise also brief both issues under New York law. (Pl. Opp. 22-25.) The Court nevertheless briefly undertakes a choice of law analysis out of an abundance of caution.

## B. Breach of Express Warranty

To prevail on a claim of breach of express warranty in New York, "a plaintiff must show 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase' and that the warranty was relied upon.'" *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110, 111-12 (2d Cir. 2010) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (App. Div. 2d Dep't 1989) (internal quotation omitted))). Similarly, under California law, a claim for breach of express warranty requires that "a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *See Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, at *10 (N.D.N.Y. Apr. 17, 2018) (quoting *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015))). Therefore, as to the basic elements of these claims, there is no conflict in law between New York and California, such that the Court can proceed under New York law.

Turning to the merits, Defendants do not appear to challenge whether Plaintiffs have sufficiently met the elements of a breach of express warranty. Rather, they argue that "Plaintiffs have not alleged privity." (Def. Mot. 21.) On this point, there appears to be a split within this circuit as to whether privity is required under New York law. *Compare Koening v. Boulder Brands*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014) ("Here, as in *Ebin,* Plaintiffs have pleaded solely economic injury, and therefore privity is required to assert a breach of warranty claim.") *with Mahoney v. Endo Health Sols., Inc.*, No. 15cv9841(DLC), 2016 WL 3951185, at *6 (S.D.N.Y. July 20, 2016) ("[M]ore recent authority follows *Randy Knitwear* and does not require privity between a consumer and a manufacturer where the plaintiff alleges breach of an express warranty and seeks only economic damages."). After a review of the relevant authority, the Court tends to agree that privity is not a requirement. As noted by Plaintiffs, the New York Court of Appeals in *Randy Knitwear, Inc. v. Am. Cyanamid Co.* "dispensed with the requirement of privity" for claims of "breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods." 181 N.E.2d 399, 402-04 (N.Y. 1962). Numerous courts in this circuit and in New York—as recently as last year—have followed this holding. *See, e.g.*, *Suarez v. Cal. Nat. Living, Inc.*, No. 17 CV 9847 (VB), 2019 WL 1046662, at *8 (S.D.N.Y. Mar. 5, 2019) (explaining that, in light of *Randy Knitwear*, "plaintiff need not be in privity with defendant to prevail on her breach of express warranty claim"); *Perez v. B. Braun Med., Inc.*, No. 17 Civ. 8512 (LLS), 2018 WL 2316334, at *5 (S.D.N.Y. May 9, 2018) ("[A]n express warranty may be formed by advertisements and privity is not required to sustain a cause of action seeking to recover damages for breach of an express warranty."); *Murrin v. Ford Motor Co.*, 756 N.Y.S.2d 596, 598 (App. Div. 2d Dep't 2003) ("privity is not required to sustain a cause of action seeking to recover

damages for breach of an express warranty"). And, although some courts may differ on the extent that privity is not required for a breach of express warranty claim, *see Suarez*, 2019 WL 1046662 at *8, courts relying on *Randy Knitwear* and its progeny do appear to agree that, at the very least, "New York law does not require privity when a breach of express warranty is 'based on misrepresentations contained in public advertising or sales literature.'" *Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 WL 2470844, at *10 (S.D.N.Y. June 7, 2017)) (internal quotations omitted) (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2016)).

Defendants nevertheless urge this Court to conclude, as some others have, that New York's Uniform Commercial Code ("N.Y. U.C.C.") displaced *Randy Knitwear*. (Defs. Mot. 9 (citing, *inter alia*, *Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311(JSR), 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013)).) The Court is not persuaded. Several courts have observed that, although *Randy Knitwear* predated the enactment and amendments of the N.Y. U.C.C., the comments to N.Y. U.C.C. § 2-313, which deals with express warranties, makes clear that "the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized warranties need not be confined either to sales contracts or to the direct parties to such contracts." *See, e.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *16 (E.D.N.Y. Sept. 26, 2016) (citations omitted); *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185 at *6 (quoting N.Y. U.C.C. § 2-313 cmt. 2). Moreover, as the *Mahoney* court explained, N.Y. U.C.C. § 2-318 further supports the view that *Randy Knitwear* has not been superseded by statute. Specifically, the New York annotation to that section explains that

> the Code enlarges the number of prospective plaintiffs in a warranty action but it does not increase the number of potential defendants. In no way is the Code intended to limit the extension of warranty protection by the courts to a greater

number of plaintiffs or the expansion of manufacturer's liability as in [*Randy Knitwear*].

*Mahoney*, 2016 WL 5372794 at *7 (alterations in original) (quoting N.Y. U.C.C. § 2-318, N.Y. Annotations).  Like the courts in *Mahoney* and *Sitt*, the Court here is of the view that these U.C.C. comments persuasively establish that *Randy Knitwear* and its progeny remain good law even after the enactment of the U.C.C. in New York.

Because Defendants contentions and authority to the contrary are not enough to overcome the seeming weight of authority concluding that privity is not required for breach of express warranty claims related to misrepresentations contained in public advertising or sales literature, their motion to dismiss Plaintiffs' breach of express warranty claims is DENIED.

## C. Unjust Enrichment

Under New York law, a plaintiff must establish that "(1) the defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Schatzki v. Weiser Capital Mgmt., LLC*, 995 F. Supp. 2d 251, 252 (S.D.N.Y. 2014).  In California, however, "unjust enrichment" is not a standalone cause of action.  *Quiroz v. Sabtino Truffles N.Y., LLC*, No. SA CV 17-0783-DOC (KES), 2017 WL 8223648, at *13 (C.D. Cal. Sept. 18, 2017).  Instead, "unjust enrichment is 'a theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request,'" and such claims will typically be construed as a "quasi-contract claim seeking restitution." *Id.* (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).  Even so, courts in this circuit have compared the elements of an unjust enrichment claim under New York law with the elements of a restitution claim under California law for purposes of choice of law analyses.  *First Hill Partners, LLC v. BlueCrest Capital Mgmt. Ltd.*, 52 F. Supp. 3d 625, 634 n.4 (S.D.N.Y. 2014).  Upon such a comparison, the Court here concludes that there is no

conflict between New York law and California law as it pertains to unjust enrichment.  *See Labajo v. Best Buy Stores L.P.*, 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007) (explaining that "[t]here is . . . no real conflict between the laws of California and New York for . . . unjust enrichment" and collecting cases laying out the elements of each claim).  The Court will proceed under New York law.

On the merits, Defendants do not argue that Plaintiffs failed to meet the requisite elements of an unjust enrichment claim.  (Defs. Mot. 22.)  Instead, they argue that Plaintiffs' unjust enrichment claim fails because it "merely repeats the allegations in the Plaintiffs' prior claims." (*Id.*)  Plaintiffs' oppose, contending that they are permitted to plead unjust enrichment as an alternative theory of recovery.  (Pls. Opp. 25.)  The Court disagrees.

In general, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."[11]  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). This is true even though "a claim for unjust enrichment may be pleaded in the alternative to other claims."  *See Gordon v. Hain Celestial Grp., Inc.*, No. 16-cv-6526 (KBF), 2017 WL 213815, at *5 (S.D.N.Y. Jan. 18, 2017).  Here, in the FAC, Plaintiffs allege that Defendants committed actionable wrongs by misrepresenting the capacity of their Power Banks to consumers at the point of sale and on the Power Banks' packaging.  (FAC ¶¶ 3-5, 27-32, 116.)  Thus, to the extent these claims ultimately succeed, the unjust enrichment claim would be duplicative, and to the extent the claims fail, the basis for Plaintiffs' unjust enrichment claim would necessarily crumble.  *Cf. Corsello*, 967 N.E.2d at 1185.  The Court therefore concludes that Plaintiffs' unjust

---

[11]    A potential conflict of law may have related to whether an unjust enrichment claim may duplicate or replace a conventional contract or tort claim.  However, courts in this circuit have recognized that both New York and California law preclude an unjust enrichment claim "if a valid contract covers the subject matter of the dispute."  *First Hill Partners, LLC*, 52 F. Supp. 3d at 634 (collecting cases).  As such, there does not actually appear to be any meaningful difference between the two states' laws.

enrichment claim is duplicative of other claims in the FAC. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, Defendants motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs shall file a second amended complaint consistent with this opinion by February 12, 2020. Thereafter, Defendants are directed to either file their answer or otherwise respond by March 13, 2020. If Defendants intend to file an answer, they must notify the Court by March 9, 2020, and the parties are then directed to complete the attached Civil Case Discovery Plan and Scheduling Order and submit it to the Court by March 13, 2020.

The Clerk of Court is respectfully requested to terminate the motion at ECF No. 26.

Dated:  January 13, 2020          SO ORDERED:
      White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

-----------------------------------------------------------x

                                                    **CIVIL CASE DISCOVERY PLAN**
                            Plaintiff(s),            **AND SCHEDULING ORDER**

        - against -


                            Defendant(s).      _____ CV _____ (NSR)

-----------------------------------------------------------x

   This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel,
pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a
      Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties
      are free to withhold consent without adverse substantive consequences.  (If all parties
      consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses thereto
      shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3
      [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than
      _____.

7.    Non-expert depositions shall be completed by _____.

      a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held
            until all parties have responded to any first requests for production of documents.

      b.    Depositions shall proceed concurrently.

      c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party
            depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than
      _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated:  White Plains, New York
        _____


        _____
        Nelson S. Román, U.S. District Judge